UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

INDEMNITY INSURANCE COMPANY
OF NORTH AMERICA *as subrogor of*
GE AVIATION MATERIALS, L.P.,

                          Plaintiff,

-v-

EXPEDITORS INTERNATIONAL OF
WASHINGTON, INC., *et al.*,

                          Defendants.

17-CV-2575 (JPO)

OPINION AND ORDER

---

J. PAUL OETKEN, District Judge:

      Plaintiff Indemnity Insurance Company of North America ("Indemnity") brings this action against Defendants Expeditors International of Washington, Inc. ("Expeditors") and China Airlines, Inc. ("China Airlines"), in connection with damage allegedly sustained by cargo during international transport. Invoking the Convention for the Unification of Certain Rules for International Carriage by Air, S. Treaty Doc. No. 106-45 (May 28, 1999) (the "Montreal Convention"), Indemnity asserts claims for breach of contract, breach of bailment obligations, and negligence. (Dkt. No. 1 ("Compl.") at 3–5.) After a round of summary judgment under Federal Rule of Civil Procedure 56, this Court determined that the Montreal Convention did not apply and denied all motions for summary judgment without prejudice. (Dkt. No. 62.) All parties have once again moved for summary judgment pursuant to this Court's diversity jurisdiction. (Dkt. Nos. 64, 68, 71.) For the reasons that follow, Indemnity and China Airlines' motions for summary judgment are denied. Expeditors' motion for summary judgment is granted in part and denied in part.

1

**I.      Background**

The Court assumes familiarity with the facts as set forth in *Indemnity Insurance Co. of North America v. Expeditors International of Washington, Inc.*, No. 17 Civ. 2575, 2019 WL 720698 (S.D.N.Y. Feb. 20, 2019), as the material facts relevant to these motions for summary judgment have not changed.

**II.     Legal Standard**

Summary judgment under Rule 56 is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if, considering the record as a whole, a rational jury could find in favor of the non-moving party. *See Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

"On summary judgment, the party bearing the burden of proof at trial must provide evidence on each element of its claim or defense." *Cohen Lans LLP v. Naseman*, No. 14 Civ. 4045, 2017 WL 477775, at *3 (S.D.N.Y. Feb. 3, 2017) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). "If the party with the burden of proof makes the requisite initial showing, the burden shifts to the opposing party to identify specific facts demonstrating a genuine issue for trial, *i.e.*, that reasonable jurors could differ about the evidence." *Clopay Plastic Prods. Co. v. Excelsior Packaging Grp., Inc.*, No. 12 Civ. 5262, 2014 WL 4652548, at *3 (S.D.N.Y. Sept. 18, 2014). The court views all "evidence in the light most favorable to the non-moving party," and summary judgment may be granted only if "no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (internal quotation marks omitted) (second quoting *Lunds, Inc. v. Chem. Bank*, 870 F.2d 840, 844 (2d Cir. 1989)). Finally, in cases involving cross-motions for summary judgment, "the court must evaluate each

party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Coutard v. Mun. Credit Union*, 848 F.3d 102, 114 (2d Cir. 2017) (citation omitted).

## III. Discussion

### A. Indemnity's Motion for Summary Judgment

Indemnity asserts three claims against the Defendants: (1) breach of contract of carriage, (2) breach of bailment obligations, and (3) negligence. (Compl. ¶¶ 9–23.) However, in its motion for summary judgment, Indemnity fails to "provide evidence on each element of its claim." *Cohen Lans LLP*, 2017 WL 477775, at *3 (citing *Celotex Corp.*, 477 U.S. at 322–23). Indemnity simply gestures at evidence that would support its claims but fails to demonstrate how the evidence would satisfy each element of those claims. (*See* Dkt. No. 65 at 6; *see also* Dkt. No. 78 at 2–4 ("Plaintiff has established its prima facie cargo case: the shipment at issue was delivered to the carrier in good order . . . and delivered in bad order . . . .").) Tellingly, the elements of its claims are not even cited, much less connected to any evidence in the case. This deficiency alone requires this Court to deny Indemnity's motion for summary judgment.

Indemnity argues that under federal common law both Expeditors and China Airlines received sufficient notice of the claims against them. (Dkt. No. 65.) In the prior round of summary judgment briefing, Expeditors argued that GE failed to file a timely formal claim in accordance with the Global Air Freight Transportation Contract ("Global Contract"), and thus cannot recover any damages. (*See* Dkt. No. 37 at 16.) This Court concluded in its prior opinion that "there is a genuine dispute regarding whether the subrogor — GE Aviation Materials — was a party to the Global Contract, and whether the Global Contract independently applies to all shipments undertaken by Expeditors on behalf of GE Aviation Materials." (Dkt. No. 62 at 13.) The potential existence of this contract is critical, because "[u]nder federal common law, a

3

notice-of-claim clause . . . is enforceable as long as the time limit is not unreasonable." *St. Paul Fire & Marine Ins. Co. v. Delta Air Lines, Inc.*, 583 F. Supp. 2d 466, 468 (S.D.N.Y. 2008) (citing cases).

While Indemnity argues that notice under federal common law does not require a sworn statement as is necessary by the terms of the Global Contract, this is irrelevant because in *St. Paul Fire*, the defendant's contract of carriage did not "require a particular format for a claim[,] nor [did it] require the inclusion of specific information." 583 F. Supp. 2d at 468. In contrast, the Global Contract *does* require notice to be delivered in a sworn statement. Accordingly, there is still a genuine issue of fact regarding notice to Expeditors that cannot be resolved on a motion for summary judgment.

Indemnity also argues that proper notice was provided to China Airlines by virtue of its notice to Expeditors. Even if notice to Expeditors was proper, there is still a separate genuine dispute of fact surrounding whether constructive notice was provided to China Airlines. The Conditions of Contract under China Airlines' master waybill provides that written notice "may be made to the Carrier whose air waybill was used, or to the first Carrier or to the last Carrier or to the Carrier, which performed the carriage during which the loss, damage or delay took place." (Dkt. No. 75-3 ¶ 10.2.) In the Conditions of Contract, "Carrier" is defined to include "the air carrier issuing this air waybill and all carriers that carry or undertake to carry the cargo or perform any other services related to such carriage." (Dkt. No. 75-3 ¶ 1.) China Airlines argues that because Expeditors functioned as a freight forwarder rather than as a carrier, it does not qualify as a "carrier" within the meaning of the Conditions of Contract for notice purposes. (*See* Dkt. No. 70 at 4–5; Dkt. No. 83 at 3–4.) Indemnity does not seem to dispute that freight

4

forwarders cannot qualify as carriers;[1] instead, it argues that because Expeditors issued a waybill identifying itself as the carrier, Expeditors is definitionally a carrier and not a freight forwarder for the purposes of notice. (*See* Dkt. No. 77 at 2–3.)

However, there are not enough facts in the record to determine whether Expeditors functioned as a freight forwarder or a carrier for the purposes of this transaction. While Expeditors describes itself as an "indirect air carrier (colloquially, an 'air freight forwarder') as defined by 14 C.F.R. §380.2" (Dkt. No. 72 ¶ 1), this statement is not outcome determinative. In *Prima U.S. Inc. v. Panalpina, Inc.*, the Second Circuit noted that "[f]reight forwarders generally make arrangements for the movement of cargo at the request of clients and are vitally different from carriers . . . which are directly involved in transporting the cargo." 223 F.3d 126, 129 (2d Cir. 2000). It stressed that "a freight forwarder does *not* issue a bill of lading, and is . . . not liable to a shipper." *Id.* Despite that fact, Indemnity's argument that because Expeditors issued a waybill and assumed liability it cannot act as a freight forwarder reflects too limited a view. Whether a bill of lading is issued is just one factor of the analysis. Another factor to be considered is whether the entity "consolidate[d] cargo from numerous shippers into larger groups for shipment." *See id.* In short, it is not clear from this record whether Expeditors "set things up

---

[1] While considering a similar provision in an air waybill, Judge Woods found that Expeditors did qualify as a carrier on the theory that indirect carriers generally qualify as carriers. *See Indem. Ins. Co. of N.A. v. Expeditors Int'l of Wash., Inc.*, 382 F. Supp. 3d 302, 309 (S.D.N.Y. 2019) ("The terms and conditions to the air waybill . . . define carrier as 'all carriers that carry or undertake to carry the cargo hereunder or *perform any services incidental to such air carriage*.' . . . It is not clear to the Court how . . . [Expeditor's] role in negotiating the rates for the shipment at issue in this case and providing Plaintiff with documentation regarding that shipment would not qualify as 'perform[ing] . . . services incidental to such air carriage.'" (last alteration in original)). However, Indemnity did not make this argument here, and seems to agree that a freight forwarder does not qualify as a carrier for the purposes of this provision. Consequently, Indemnity has waived this argument and this Court will accept the judgment of the parties that "carrier" is an industry term that does not encompass indirect carriers.

5

and made reservations, but did not engage in any hands-on heavy lifting." *Id.* This Court is not persuaded that the issuance of a waybill settles the question of whether Expeditors actually functioned as a freight forwarder or carrier. Accordingly, Indemnity's motion for summary judgment must be denied in its entirety.

### B. Expeditors' Motion for Summary Judgment

In its motion for summary judgment, Expeditors argues that Indemnity's breach of contract of carriage, breach of bailment obligations, and negligence claims must fail as a matter of law. As an initial matter, under federal common law, claims by shippers against carriers are limited to breach of contract claims — there can be no tort or bailment liability. *See Nippon Fire & Marine Ins. Co. v. Skyway Freight Sys., Inc.*, 235 F.3d 53, 61–62 (2d Cir. 2000). Accordingly, Indemnity's breach of bailment obligations and negligence claims must be dismissed. Expeditors' motion for summary judgment is granted with respect to those claims.

However, Indemnity's breach of contract claim cannot be resolved in Expeditors' favor as a matter of law. Expeditors admits, and this Court agrees, that Expeditors' clean bill of lading is prima facie evidence that the engine at issue was received in good working order. (*See* Dkt. No. 67-7; Dkt. No. 73 at 14); *Asoma Corp. v. M/V Land*, 46 Fed. App'x 34, 36 (2d Cir. 2002). Expeditors argues that this initial presumption is rebutted by the fact that the engine was being shipped to be overhauled. (*See* Dkt. No. 73 at 14; Dkt. No. 85 at 3.) While the presumption that the engine was received in good working order can certainly be rebutted, *see Philipp Bros. v. MV "Sabogal",* 490 F. Supp. 975, 980 (S.D.N.Y. 1980), the simple fact that the airline engine was being shipped for overhaul does not so strongly rebut the initial presumption that the engine was received in good condition such that "no reasonable trier of fact could find in favor of" Indemnity. *Allen*, 64 F.3d at 79 (quoting *Lunds, Inc.,* 870 F.2d at 844).

6

Similarly, Expeditors asserts that Indemnity cannot prove causation. Expeditors argues that the Declaration of Bill Chang (Dkt. No. 66) is inadmissible because he is providing impermissible lay opinion testimony based on "scientific, technical, or other specialized knowledge." (Dkt. No. 73 at 16 (citing Fed. R. Evid. 701(c)).) While the Court reserves judgment on the exact contours of what is and is not admissible from the Chang Declaration, it is clear that all testimony "rationally based on the witness's perception" is admissible. Fed. R. Evid. 701(a). Therefore, at a minimum Chang's testimony that he "saw that the engine was improperly tied down on its cradle with numerous straps over the cradle," and that "[t]he straps had 'CHINA AIRLINES' printed on them" is evidence that this Court can consider. (Dkt. No. 66 ¶ 2.)

Further, there is other evidence in the record that an improper tiedown can damage an engine. For example, Expeditors' Standard Operating Procedures noted: "<u>CAUTION</u>: THE ENIGNE [sic] AND CRADLE ASSEMBLY MUST BE FREE OF ALL FASTENER SYSTEM [sic] WHICH PREVENT THE FULL TRAVEL OF THE SHOCK MOUNTS, OR DAMAGE TO THE ENGINE BEARINGS COULD OCCUR." (Dkt. No. 67-3 at 14.) While Expeditors argues that these instructions are not applicable to the model of the aircraft engine at issue (*see* Dkt. No. 73 at 8), Indemnity disputes this fact (*see* Dkt. No. 78 at 5). Further, there is evidence that the engine stands feature placards detailing the tie down instructions and that improper tiedown can damage the engine. (*See* Dkt. No. 67-2 at 151:11–153:10; Dkt. No. 67-4 at 30:20–31:2.) While Expeditors argues that those placards are only for ground transport (*see* Dkt. No. 73 at 6–7), Indemnity offers evidence that the placards are applicable to all forms of transportation (*see* Dkt. No. 67-2 at 151:21–152:13). Accordingly, there are several disputed

7

material facts relevant to causation that preclude this Court from granting a motion for summary judgment in Expeditors' favor.

Expeditors further argues that Indemnity has not sufficiently established the amount of damages it suffered. However, Bill Chang's declaration specifically states that the invoice bill that was sent to GE was "related to the inspection and repair resulting from the improper transportation of the engine," and that the "invoice does not include any charges for an engine overhaul . . . which costs several million dollars." (Dkt. No. 66 ¶ 6.) Further, Indemnity offers evidence that Expeditors, at least in its June 10, 2016, letter to China Airlines, endorsed the notion that the invoice represented only "cost[s] . . . due to [the] improper tie down of the engine to the airline pallet by China Air [and that] only minimum workscope level was conducted due to [the] improper tie down. No higher workscope levels were conducted in order to mitigate the costs." (Dkt. No. 67-11.) While Expeditors is free to dispute whether this evidence is sufficient to establish damages, evidence is not so lacking that "no reasonable trier of fact could find" that Indemnity has established the amount of its damages. *Allen*, 64 F.3d at 79 (quoting *Lunds, Inc.*, 870 F.2d at 844).

Finally, Expeditors argues that because GE failed to package the engine properly or to inform Expeditors of any special loading requirements, Indemnity's claim for breach of contract must fail. However, this too cannot be resolved on a motion for summary judgment. In response, Indemnity points out that Expeditors' Standard Operating Procedures details how engines are to be tied down in all circumstances. (*See* Dkt. No. 67-3.) Further, GE flagged that "[i]t's very important to make sure the engine is under correct tie-down throughout the entire trip," to which Expeditors' Regional Account Manager Jennifer Schmitt replied, "well noted on the tie down." (Dkt. No. 67-6 at 2–3; Dkt. No. 67-4 at 20:13–20:18, 20:22–20:24.) Schmitt did

8

not ask for clarification of those instructions. (Dkt. No. 67-4 at 20:19–20:21.) Given the evidence that GE communicated its desire to have the engine tied down properly, and other evidence that Expeditors would have known how to accomplish that, it cannot be said that no reasonable trier of fact could find in favor of Indemnity. Therefore, none of Expeditors' arguments that Indemnity's breach of contract claim must fail are availing. Accordingly, Expeditors' motion for summary judgment is denied as to Indemnity's breach of contract claim.

### C. China Airlines' Motion for Summary Judgment

In its motion for summary judgment, China Airlines argues that it never received notice of Indemnity's claim against it, and therefore cannot be held liable for any damage to the engine. It is undisputed that China Airlines never received actual notice of Indemnity's claim. (Dkt. No. 69 ¶ 5.) China Airlines argues that constructive notice was not provided to it because (1) Expeditors does not qualify as a "carrier" to which notice can be given pursuant to its Contract of Carriage, and (2) two separate waybills were issued by Expeditors and China Airlines. (Dkt. No. 70.) For the reasons stated above, *see supra* Section III.A, this Court cannot decide at this stage whether Expeditors is a "carrier" to which notice can be given.

China Airlines supplements its notice argument by asserting that because there are two separate waybills, China Airlines and Expeditors are not bound to one contract, and thus notice to Expeditors cannot constitute notice to China Airlines. (*See* Dkt. No. 70 at 5–6.) This argument is also unavailing. Indemnity is not attempting to hold China Airlines to the notice requirements set forth in Expeditors' waybill. China Airlines' own waybill allows for notice "to the Carrier whose air waybill was used, or to the first Carrier or to the last Carrier or to the Carrier, which performed the carriage during which the loss, damage or delay took place." (Dkt. No. 75-3 ¶ 10.2.) Therefore, under the terms of its own waybill, constructive notice is permitted. The question here is only whether Expeditors qualifies as a "carrier" to which notice can be

9

given. That question is an open one based on the record before this Court. Accordingly, China Airlines' motion for summary judgment must be denied in its entirety.

## IV. Conclusion

For the foregoing reasons, Indemnity's motion for summary judgment is DENIED, Expeditors' motion for summary judgment is GRANTED in part and DENIED in part, and China Airlines' motion for summary judgment is DENIED.

The parties shall appear for a status conference in the case on January 21, 2020, at 11:30 a.m. in Courtroom 706 of the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, NY 10007.

The Clerk of Court is directed to close the motions at Docket Numbers 64, 68, and 71.

SO ORDERED.

Dated: December 16, 2019
      New York, New York

_____
J. PAUL OETKEN
United States District Judge